ERVIN, Judge.
The Special Disability Trust Fund (Fund) appeals from an order of the deputy commissioner, directing the Fund to reimburse appellee, employer/carrier (e/c), sixty percent of the wage-loss benefits paid by the latter to an employee having a preexisting permanent impairment. We reverse because the deputy’s order retroactively applied the 1983 amendment to Section 440.-15(3)(b)4, Florida Statutes,[1] to the employee’s work-related injury, which occurred before the effective date of the amendment to the statute, as the basis for ordering reimbursement.
On February 3, 1983, Ben Frey, an employee of appellee, suffered a work-related injury resulting in a ten percent permanent physical impairment to the left knee. Frey had brought with him to the work place a preexisting permanent physical impairment: a below-the-elbow amputation of his right arm. The employer was aware of that condition at the time it hired him. Frey obtained maximum medical improvement on November 21, 1983, and the e/c paid wage-loss benefits from November 21, 1983 until January 31,1984. On November 29, 1983, Frey reached age 65 and became eligible for social security benefits. Subsequently, Frey and the e/c entered into a stipulation and joint petition for lump sum settlement for all compensation benefits, excluding future medical benefits. Pursuant to the settlement, the e/c paid Frey a *60 lump sum of $9,250.00, and an order was later entered approving the same.
Thereupon the e/c sought full statutory reimbursement from the Fund for wage-loss benefits paid on February 29, 1984 in the amount of $240.06 and the later $9,250.00 lump sum amount. The Fund objected on the following alternative grounds: (1) If Frey was permanently and totally disabled, he was not paid 175 weeks; therefore no excess compensation was paid as required by Section 440.49(2)(c)3, Florida Statutes; or, (2) if Frey was not permanently and totally disabled, the lump sum payment was a gratuity, as no wage-loss benefits were due him under Section 440.-15(3)(b)4, Florida Statutes (1981), in effect at the time of Frey’s work-related injury, because before the entry of the lump sum settlement, Frey had become 65 and began receiving social security benefits. Before the hearing on the e/c’s entitlement to reimbursement was conducted, the parties stipulated that the employee’s preexisting permanent impairment, and his industrial impairment merged to create an overall greater disability than would have resulted from the permanent impairment following the later industrial accident. The deputy’s subsequent order acknowledged this court’s opinion in Ralston Purina Company v. Byers, 457 So.2d 1138 (Fla. 1st DCA 1984), interpreting Section 440.15(3)(b)4, Florida Statutes (1983), to be prospective only in its effect, yet nevertheless directed the Fund to reimburse the e/c on the following grounds: At the time of the deputy’s approval of the lump sum settlement, it was “fair and reasonable” for the e/c to settle the case on the belief that it had a continuing obligation to pay wage-loss benefits to an employee who became 65 after the effective date of the statute’s amendment, because at such time at least two deputy commissioners had applied the 1983 amendments to the wage-loss provision statutes retroactively, and this court’s opinion in Ralston Purina was not decided until five months following such approval. Accordingly, the deputy found merit in the argument by the e/c that it was forced either to pay wage-loss benefits in accordance with the new wage-loss provision, or run the risk of encountering a bad faith attorney’s fee claim. We cannot agree.
The employer has the burden to establish entitlement to reimbursement from the Fund. Special Disability Trust Fund v. Siesta Lago Mobile Homes, 473 So.2d 8 (Fla. 1st DCA 1985). The statutory definition of “merger” includes the condition that the employer “has been required to pay, and has paid, permanent total disability, permanent impairment, or wage-loss benefits for ... [the] materially and substantially greater disability”. Section 440.-49(2)(b)2.b. At the time of settlement, the e/c was not required to pay any wage-loss benefits to Frey after he had reached the age of 65. Section 440.15(3)(b)3.d., Florida Statutes (1981). The e/c’s belief that it had a continuing obligation to provide wage-loss benefits was based only upon two deputy commissioners’ orders that, while arguably persuasive as of the date of settlement, had no value as precedent at the time the order on review was entered.
Moreover, even if the e/c acted upon a reasonable belief, such a belief is not the statutory standard. Ralston Purina, the first and only appellate decision on the issue, clearly states that as to work-related injuries occurring before the effective date of the amendment to the statute, the right to wage-loss benefits terminates when the employee reaches age 65 and is eligible for social security benefits. 457 So.2d at 1140. Thus, the e/c was not required to pay further wage-loss benefits to Frey. Under the circumstances, the e/c’s assertion that it faced the risk of a bad faith attorney’s fee is not convincing. We note that one of the two orders which had applied section 440.15(3)(b)4 retroactively was, at the time settlement was agreed upon between the e/c and the employee, pending on appeal in Ralston Purina. If the e/c had denied wage-loss benefits to an employee after he had reached his 65th birthday, pending resolution of the Ralston Purina appeal, we would not consider such denial to be an act of bad faith. Cf. Hankison v. University of Florida, 432 So.2d 699, 701 (Fla. 1st *61 DCA 1983) (where status of law was unsettled, no showing was made of entitlement to bad faith attorney fee award).
The deputy’s order directing reimbursement is reversed.
JO ANOS and BARFIELD, JJ., concur.

. The above statutory subsection provides in part:
If an employee is entitled to both wage-loss benefits and social security retirement benefits under 42 U.S.C. ss. 402 and 405, such social security retirement benefits shall be primary and the wage-loss benefits shall be supplemental only. The sum of the two benefits shall not exceed the amount of wage-loss benefits which would otherwise be payable. The amendment became effective on June 30, 1983. See Chapter 83-305, § 5, Laws of Fla. Section 440.15(3)(b)3.d., Florida Statutes (1981), had previously required wage-loss benefits to terminate "[w]hen the injured employee reaches age 65 and becomes eligible for benefits under 42 U.S.C. ss. 402 and 405”.